AFFIRM; Opinion issued January 18, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

---

No. 05-11-00824-CR

---

ERIC GERARD WIEGAND, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the County Criminal Court No. 10
Dallas County, Texas
Trial Court Cause No. MA10-16264

---

# MEMORANDUM OPINION

Before Justices Francis, Murphy, and Evans[1]
Opinion By Justice Murphy

A jury found Eric Gerard Wiegand guilty of violating a protective order, and the trial court assessed punishment at 365 days' confinement, probated for twenty-four months, and a fine of $2300. TEX. PENAL CODE ANN. § 25.07 (West 2011). Appellant claims in a single issue that the evidence is legally insufficient to support his conviction because he was not properly served notice of the protective order and did not knowingly or intentionally violate the terms and conditions of the order. We affirm.

---

[1] The Honorable Joseph Morris, Retired Justice, was a member of the panel at the time this case was submitted for decision. Due to his retirement from this Court on December 31, 2012, he did not participate in deciding the case. He was replaced on the panel by Justice David Evans. *See* TEX. R. APP. P. 41.1(a).

## Background

Appellant's wife requested and received a protective order against appellant as part of their divorce proceedings. The protective order prohibited appellant from communicating with his older son, J.W., but did not prevent appellant from visiting or communicating with his younger son, Z.W., or daughter, V.W. The order required appellant to maintain a distance of 500 feet from the house in which the children and their mother resided except for times when appellant was picking up or dropping off Z.W. or V.W. Specifically, the protective order contained the following language:

> [Appellant] is . . . Prohibited from going to or near the residence and or school of [J.W.] which he normally attends. Specifically, [appellant], is prohibited from going to or near [the residence] and the school which [J.W.] attends and to specifically require [appellant] to maintain a distance of at least 500 feet from these locations, except when [appellant] picks up and returns the two minor children, [Z.W.] and [V.W.] for his periods of possession. At those times, only [appellant] may come to the residence . . . but is ORDERED to remain in his automobile for the deliver [sic] and pick up [of] the other children.

On July 26, 2010, appellant arrived at the residence to pick up Z.W. and take him to football camp. V.W., who was eight years old at the time, was to stay home alone for approximately ten to fifteen minutes until her mother arrived home from work. J.W. was currently out-of-state. Although Z.W.'s and appellant's versions of the events differed somewhat at trial, it was undisputed that appellant came to the door of the house, entered the house, and searched through various parts of the house (including the main bedroom, closets, and the attic). Z.W. and V.W. told appellant that he was not allowed in the house and he should leave. Z.W. called his mother, who in turn called the police and rushed home from work. When she arrived, the police were already at the house talking to appellant. Appellant was charged with violation of the protective order. Specifically, the information charged appellant with intentionally and knowingly going to and near J.W.'s residence in violation of a protective order issued "under authority of Section 6.504 and Chapter 85 of the

Family Code and Article 17.292 of the Code of Criminal Procedure."

Appellant asserted at trial that he was aware of the protective order and that he had been "read verbiage over the phone by [his civil attorney] that [he] was supposed to stay away from [J.W.], 500 feet from his school, 500 feet of his residence." He claimed that although he was aware of the protective order and had been provided information regarding it by phone, the first time he read the order was when a police officer showed it to him after he had entered the home. Appellant also testified that had he read the protective order prior to the incident, he would not have entered the home.

## Discussion

Appellant argues on appeal that the evidence at trial was legally insufficient to support the culpable mental state necessary for his conviction. In a legal sufficiency review, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 319.

Appellant was charged with violating a protective order under section 25.07 of the penal code. Under this section, a person commits an offense, in relevant part, if "the person knowingly or intentionally . . . goes to or near" the residence of a person protected by an order issued under article 17.292 of the code of criminal procedure or chapter 85 of the family code. TEX. PENAL CODE ANN. § 25.07(a)(3).

Appellant and the State disagree regarding the mental state necessary to find a violation of a protective order under this section. Appellant argues the State must prove "he knew that by

–3–

entering the house while [J.W.] was not present, he was violating the terms of the protective order." The State argues the evidence must show merely that the defendant had "some knowledge" of the order and was given the resources to learn the provisions of the order.

The Texas Court of Criminal Appeals previously addressed this issue in *Harvey v. State*, 78 S.W.3d 368 (Tex. Crim. App. 2002). In *Harvey*, the defendant was charged with violating a protective order under section 25.07 of the penal code, the same section applicable here. He complained that the jury charge was defective because it did not require the jury to find that he committed assault "knowing it would or intending to violate the protective order." *Id.* at 369. He also argued that the order did not require the jury to find that he knew the order existed, was aware of its terms, or knew that the order prohibited assault. *Id.*

The court of criminal appeals read section 25.07 to prescribe a culpable mental state for the element "in violation of an order" because "the meaning of that term necessarily includes certain knowledge that amounts to a mental state." *Id.* at 371. But the court did not agree that "intentionally" and "knowingly" were the correct mental states. Instead, it concluded the relevant statutes under which a protective order could be prosecuted under section 25.07 all contained procedures "to insure that the person to whom the protective order applies has knowledge of the order, or at the very least such knowledge of the application for a protective order that he would be reckless to proceed without knowing the terms of the order." *Id.* at 371. As a result, a person charged with violating section 25.07 "would know the terms of the order or would know that he was subject to the issuance of such an order." *Id.* at 373. The court concluded it is not necessary that the person charged "knew its provisions." *Id.* at 373. Instead:

> [t]he requirements are only that the respondent be given the resources to learn the provisions; that is, that he be given a copy of the order, or notice that an order has been applied for and that a hearing will be held to decide whether it will be issued.

-4-

The order is nonetheless binding on the respondent who chooses not to read the order, or who chooses not to read the notice and the application and not to attend the hearing.

*Id.*

Based on this precedent, the State was not required to show appellant knew the specific terms of the protective order in order to be bound; accordingly, it did not have to show appellant knew he was violating those terms. All the State had to show was that appellant was given the resources to learn the order's provisions. Appellant admitted his attorney was present at the hearings on the application and signed the final order. Appellant also admitted he was aware of the protective order and "had it read to [him] over the phone by [his] civil attorney."

Finally, part of appellant's argument regarding lack of knowledge of the protective order is the alleged failure of the State to prove appellant was served with the protective order as required by family code section 85.041(a). That section provides for delivery of a protective order by three methods, including delivery pursuant to rule 21a of the rules of civil procedure. *See* TEX. FAMILY CODE ANN. § 85.041(a)(1) (West 2008). Rule 21a provides for service, among other methods, by delivery to a party's attorney. *See* TEX. R. CIV. P. 21a. Appellant's attorney signed the order, evidencing delivery.

Viewing the evidence in the light most favorable to the verdict and deferring to the jury's determination of the credibility of the evidence, we conclude the evidence is legally sufficient to show appellant's knowledge of the protective order.

We overrule appellant's single issue and affirm the trial court's judgment.

_____
MARY MURPHY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

110824F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ERIC GERARD WIEGAND, Appellant

No. 05-11-00824-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the County Criminal Court No. 10 of Dallas County, Texas. (Tr.Ct.No. MA10-16264).
Opinion delivered by Justice Murphy, Justices Francis and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 18, 2013.

_____
MARY MURPHY
JUSTICE